581 F.2d 145
 99 L.R.R.M. (BNA) 2535, 84 Lab.Cas. P 10,750
 Anthony BALDINI, Plaintiff-Appellant,
v.
LOCAL UNION NO. 1095, INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE ANDAGRICULTURAL IMPLEMENT WORKERS OF
AMERICA, UAW, William E. Nichols, Maurice J.Roberts, David
Lloyd, Claude Gorby, and White Motor Corporation, d/b/a
SouthBend FarmEquipment Company, Defendants-Appellees.
 No. 77-2004.
 United States Court of Appeals,
Seventh Circuit.
 Argued March 3, 1978.
Decided Aug. 9, 1978.
Rehearing and Rehearing En Banc Denied Sept. 18, 1978.
 
 Joseph V. Simeri, South Bend, Ind., for plaintiff-appellant.
 Edwin G. Fabre, Legal Dept., UAW, Detroit, Mich., for defendants-appellees.
 Before PELL and WOOD, Circuit Judges, and FLAUM, District Judge.*
 PELL, Circuit Judge.
 
 
 1
 Defendant White Motor Corporation (the Company) discharged plaintiff Anthony Baldini from its employment on April 17, 1975, on the ground that he and another employee had stolen company property. Baldini, denying the charge, asked his union, defendant Local Union No. 1095, UAW, to file a grievance on his behalf. This was done on April 24.[1] Under the collective bargaining contract between the Company and the Local Union, a grievance over a discharge begins at the "third step" of the contractual grievance procedure. This involves a meeting between the Company and the Local Union and a written reply to the grievance by the Company. At the meeting, held the same day, the Company provided its answer and denied the grievance.
 
 
 2
 The collective bargaining agreement provides that if a grievance is not satisfactorily resolved after the third step, it will be arbitrated if the Local Union makes a written request therefor within 15 days of receiving the third step answer from the Company. Although officials of the Local Union told Baldini that the steps necessary to obtain arbitration had been taken, in fact they never were. Baldini did not learn of this failure until well after the 15 days had passed, at which time he says an official of the International Union told him nothing more could be done for him. He then filed this action,[2] charging the Company with wrongful discharge and the Local and International Unions (and various officials thereof) with a breach of their duty of fair representation. No attempt was made to utilize any of the internal appeal procedures provided in the UAW Constitution. The district court granted summary judgment[3] to all defendants on the ground of Baldini's failure to exhaust the internal appeal procedures.
 
 
 3
 We consider first the doctrine of exhaustion as it applies to the claim against the union defendants. In Newgent v. Modine Manufacturing Company, 495 F.2d 919 (7th Cir. 1974), this court considered a UAW member's claim that his union had failed properly to represent him in his discharge grievance, and affirmed a district court judgment against the member on the ground of his failure to exhaust internal union remedies. The 1966 UAW International Constitution that applied in Newgent, just as the 1974 Constitution that applies here, mandated exhaustion as a precondition to initiating a civil action against the union. The court enforced this provision of the membership contract, holding that
 
 
 4
 (w)here, as here, there is no question as to the adequacy and mandatory nature of the intra-union remedies it is well settled that An exhaustion of the remedies is an indispensable prerequisite to the institution of a civil action against a union.
 
 
 5
 Id. at 927 (emphasis supplied).
 
 
 6
 To avoid the plain import of Newgent, Baldini advances four arguments. First, he says the court in Newgent did in fact decide the merits of the claim of improper discharge. That is true enough, but we fail to see how resolution of the merits of the action Against the employer implies anything about the separate and distinct action Against the union for unfair representation, not for wrongful discharge. In fact, the court expressly declined to consider the merits of the unfair representation action against the union. Id. at 928 n.19.
 
 
 7
 Second, Baldini argues that Local Union officials misrepresented the status of arbitration as that of being pursued and that an International Union official later told him nothing more could be done for him. As the Local Union officials' misrepresentations could be, in conjunction with the fact of failure to press the grievance, the very subject of relief in the internal procedures, their utterance can hardly rise to an excuse for not utilizing the procedures. Nor does the alleged statement that nothing more could be done constitute an excuse. Similar misstatements were involved in Newgent, but the court rejected Newgent's estoppel argument. By joining the UAW, Newgent (and Baldini) became obligated to exhaust union remedies, and "(n)ecessarily implied in this obligation is the duty to become aware of the nature and availability of union remedies." Id. at 928 (footnote omitted). The court pointed out that Newgent had not contended that the union had refused to provide him with a copy of the Constitution. Id. at 928 n.18. The same thing is true here, and, in addition, our record contains copies of articles published in Solidarity, the UAW magazine, clearly outlining appeal rights and procedures. The affidavit of a UAW official states that all members receive copies of Solidarity. While Baldini states that he never saw the articles, he does not deny that he received a subscription to Solidarity, and his statement that most (but not all) of the articles appeared before he joined the union surely does not aid him.
 
 
 8
 Baldini's third argument is that a letter of February 24, 1976, more than five months after this action was filed, from his attorney to counsel for the union, offering to take no affirmative action in the case while any applicable internal remedies were pursued, somehow justifies a result different from Newgent. The assertion is specious. Exhaustion is an "indispensable Prerequisite " to this action which Baldini has not met. To allow circumvention of this rule by such a late offer to exhaust, while counsel stands poised to reactivate a pending lawsuit, would make nonsense of the contractual obligation of members to give their unions a chance to redress grievances and would turn Newgent's commitment to enforcing such obligations into a mere form of words.
 
 
 9
 The final argument advanced is that the UAW internal remedies are in any event inadequate. If true, this assertion would justify nonexhaustion, but Baldini has not demonstrated the existence of a factual issue as to its truth. The decisions of Local Union officials on grievances may be appealed to the local membership, and then to the UAW International Executive Board. If satisfaction is not obtained, a member may then appeal to the UAW's independent Public Review Board, which is comprised of distinguished citizens neither employed by nor members of the UAW, and which has the final word on cases brought before it. Either the International Executive Board or the Public Review Board may award a member damages incurred as a result of union misconduct. These procedures have frequently been recognized as fair and adequate, See Newgent, supra at 927; Reid v. Auto Workers, Local 1093,80 L.R.R.M. 2886, 2892 (D.Okla.1972), Aff'd, 579 F.2d 517 (10th Cir. 1973), Cert. denied, 414 U.S. 1076, 94 S.Ct. 572, 38 L.Ed.2d 483; Parks v. International Brotherhood of Electrical Workers, 314 F.2d 886, 913 (4th Cir. 1963), Cert. denied, 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142; Developments in the Law Judicial Control of Actions of Private Associations,76 Harv.L.Rev. 983, 1035 (1963), and, indeed, Baldini challenges the adequacy of the procedures only insofar as they could not apparently gain for him reinstatement, company seniority, a clean employment record, punitive damages and attorney's fees. But relief against the Union in a civil action could never produce reinstatement, company seniority, or a clean employment record. As to punitive damages and attorney's fees, or for that matter any other relief from the union that its procedures did not yield, if Baldini can make a proper showing therefor he can return to court to obtain it. The point of the exhaustion requirement is that a union should have a right to attempt to satisfy disgruntled members, and a court should know just what the union did or did not do with respect to the complaint before trying to decide if fair representation really was denied and what relief would be just in the circumstances.
 
 
 10
 Turning to the dismissal of the action against the Company, section 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a), provides for suits to remedy violations of collective bargaining agreements. Such agreements typically provide, as does the agreement involved here, for procedures to settle the grievances of individual employees. Encouraging the full use of such procedures to resolve disputes is a vital part of the federal labor policy, and, accordingly, an employee who has not attempted to use the procedures may not sue his employer for wrongful discharge. Republic Steel Corporation v. Maddox, 379 U.S. 650, 652-53, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). On the other hand, at least where resort to the procedures is placed in the hands of the union, if the union fails fairly to represent the aggrieved employee, he is relieved of the requirement that the collective bargaining contract procedures be the means of settling the grievance and may sue the employer directly. Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 562, 567, 570-71, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); Vaca v. Sipes, 386 U.S. 171, 186, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Harrison v. Chrysler Corporation, 558 F.2d 1273, 1276-77 (7th Cir. 1977).
 
 
 11
 The Company defends the summary judgment entered in its behalf on two grounds. First, it asserts that Baldini's failure to exhaust his internal union remedies provides it with a defense. This court considered the availability of nonexhaustion as an employer's defense in the recent case of Harrison v. Chrysler Corporation, supra. Although Harrison was in the public domain prior to the district court's decision herein, the parties did not cite it to the court and the court apparently did not discover it on its own. In Harrison, this court disagreed with statements by several other circuits that nonexhaustion of internal union remedies is never a defense for an employer. Recognizing that employers could not invoke the union's interests in the enforcement of membership contracts (to which employers are not parties) and freedom from premature judicial interference with union affairs, the court nonetheless did perceive an important and legitimate employers' interest in exhaustion in certain limited cases. Where use of internal remedies could result in reversal of a union's decision not to pursue a grievance, and could thus get the bargained-for grievance procedures back on track, an employer's right to expect primary use of such procedures is quite directly implicated, and it may insist that union remedies be attempted for this purpose. Id. at 1278-79.
 
 
 12
 In Harrison, however, the court found the limited employer nonexhaustion defense inapplicable, because the union no longer had the power to revive the grievance procedure. Id. at 1279. The same situation exists here. The collective bargaining agreement between the Local Union and the Company provided that a third step grievance could be advanced to arbitration only by written request of the Union within 15 days. By the time Baldini knew enough to have begun the union appeal procedure, the 15 days had long passed, and the grievance had been finally "settled" by the Local Union's inaction. The Company in its summary judgment memorandum in the district court and in an affidavit of the plant personnel manager attached thereto, took exactly this position. Furthermore, when a Local Union official orally requested an extension of the 15-day time limit, the Company denied the request. It cannot seriously be suggested that the internal union remedies could have revived Baldini's grievance. Indeed, the Company does not argue otherwise. Baldini's nonexhaustion therefore provides the Company no defense.
 
 
 13
 The Company's primary reliance is on the proposition that there are no facts in dispute which could establish a breach of the Local Union's duty of fair representation, which breach, as we have said, is a necessary element of the action against the Company.[4] Under Vaca v. Sipes,supra, 386 U.S. at 190, 87 S.Ct. at 916, a union breaches its duty of fair representation when its conduct towards the member is "arbitrary, discriminatory, or in bad faith." It is noted that the standard is disjunctive. Vaca expressly rejected an argument that only obvious breaches such as discrimination or hostile treatment would be actionable.[5] A union may not "arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion." Id. at 191, 87 S.Ct. at 917. On the other hand, the mere settling of a grievance short of arbitration, even over the protest of the aggrieved member, is not in and of itself a breach of the union's duty. Id. at 191-92, 87 S.Ct. 903. If, as the Supreme Court expressly found in Vaca, the union has taken a grievance seriously and made reasonable efforts to investigate and process it, no breach of duty consists in the union's determination at some point that the merits of the grievance do not justify the effort and expense of further proceedings. If the union has made an honest, informed, and reasoned decision not to proceed, it has not breached its duty, even though the decision leaves the individual employee without recourse, other reasonable men might have decided differently, or the union appears in hindsight to have been simply mistaken in the factual premises of its reasoning. See, e. g., Griffin v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, 469 F.2d 181, 183 (4th Cir. 1972); Local 13, International Longshoremen's and Warehousemen's Union v. Pacific Maritime Association, 441 F.2d 1061, 1066-67 (9th Cir. 1971), Cert. denied, 404 U.S. 1016, 92 S.Ct. 677, 30 L.Ed.2d 664 (1972).
 
 
 14
 The question, which obviously turns heavily on the particular facts of each case, is whether the union has "not been guilty of malfeasance and (whether) its conduct was within the range of acceptable performance by a collective-bargaining agent." Hines v. Anchor Motor Freight, Inc., supra, 424 U.S. at 568, 96 S.Ct. at 1058. The Company insists that the Local Union's conduct was clearly within that range, because its only material act was its choice not to proceed to arbitration. If nothing more were involved, we would agree that the case was a simple one. But as the case stands now, we must assume the truth of Baldini's affidavit assertion that Local Union officials expressly lied to him about their intentions with respect to his grievance. Moreover, Local Union officials have given deposition testimony confirming Baldini's assertion that he gave them the names of four fellow employees who supposedly could corroborate his alibi for the time of the theft in question, yet the officials neither gave these names to the Company nor brought the employees to say what they knew at any of the meetings with the Company. To be sure, these facts permit innocent inferences. The officials may have had a natural reluctance to convey the disappointing news of their honest, reasoned decision to Baldini. Moreover, there is testimony that three of the witnesses could not provide definite corroboration, and the officials may have felt that a single witness would not make a strong enough case for arbitration. Still, contrary inferences are also possible, E. g., that the officials had no legitimate reason for their decision and avoided telling Baldini to postpone the moment of confrontation, and that the testimony of the single alibi witness (or more, if the hearsay summary by one of the defendants of the four witnesses' stories is inaccurate) was ignored for some arbitrary or bad faith reason. Where a choice of inferences is possible from summary judgment materials, the inference must be drawn that favors the party resisting summary judgment. Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); Pacific Maritime Association, supra. We note also in this regard the sound axiom that questions of motive, design, and intent are particularly inappropriate for summary adjudication. Without indicating any view on the proper disposition thereof, we do believe that the facts beyond the mere refusal to arbitrate at least raise such questions. In sum, notwithstanding that evidentiary exploration may well disclose a lack of merit in Baldini's claim against the Company, either because "cause" justified the discharge or there was no breach of the Local Union's duty of fair representation, summary judgment here was an inappropriate vehicle for disposition of that claim.
 
 
 15
 For the reasons set out herein, the judgment of the district court is affirmed as to the union defendants, reversed as to the Company, and remanded for further proceedings consistent with this opinion.
 
 
 
 *
 District Judge Joel M. Flaum, of the United States District Court for the Northern District of Illinois, is sitting by designation
 
 
 [1]
 At least two "informal" meetings between Local Union officials and the Company had been held in the preceding days
 
 
 [2]
 The action was originally filed in state court and subsequently removed to the district court
 
 
 [3]
 Because summary judgment was granted, our statement of the facts involved assumes the truth of Baldini's version of disputed facts
 
 
 [4]
 The district court did not base summary judgment on this ground, but the Company quite properly asks us to consider affirming on this ground, which it argues is supported by the record. See Dandridge v. Williams, 397 U.S. 471, 475 n.6, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)
 
 
 [5]
 Occasional sentences lifted from their context might make it seem that invidious hostility or some sort of malice is always required, See, e. g., Motor Coach Employees v. Lockridge, 403 U.S. 274, 300, 301, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971); Williams v. General Foods Corp., 492 F.2d 399, 405 (7th Cir. 1974), but the treatment of the issue in Hines v. Anchor Motor Freight, Inc., supra, leaves little doubt that such has not become the law. Nor do we think a fair reading of Lockridge or Williams or other cases cited by the Company to this effect really supports its argument