620 F.2d 155
 27 Fair Empl.Prac.Cas. 1439,
22 Empl. Prac. Dec. P 30,814
Clyde D. DONALDSON, Plaintiff-Appellant,
v.
TAYLOR PRODUCTS DIVISION OF TECUMSEH PRODUCTS COMPANY, and
International Union, United Automobile, Aerospace
and Agricultural Implement Workers of
America(UAW), Local 837,
Defendants-Appellees.
 No. 79-1482.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 22, 1980.
Decided April 10, 1980.
 
 Prof. Charles F. Crutchfield, Susan Zwick, (Law Student), Notre Dame University Law School, Notre Dame, Ind., for plaintiff-appellant.
 Barry A. Macey, John T. Kolinski, Indianapolis, Ind., for defendants-appellees.
 Before CUMMINGS, PELL and TONE, Circuit Judges.
 PELL, Circuit Judge.
 
 
 1
 The plaintiff-appellant, Clyde D. Donaldson, brought this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, and under the Civil Rights Act of 1870, 42 U.S.C. § 1981. He alleges that defendant Taylor Products Division of the Tecumseh Products Company (Taylor) discharged him on account of his race, and that defendant Local 837 of the UAW (union) failed adequately to represent him, also because of his race. At the close of plaintiff's evidence at trial, the district court granted a motion for dismissal as to the union, but denied it as to Taylor. After hearing all the evidence, and after submission of post-trial briefs, however, the court entered judgment in favor of the company. On appeal, plaintiff argues that the district court's dismissal of the union was grounded on plaintiff's failure to exhaust internal union remedies, and was therefore improper, and that defendant Taylor did not meet its burden of articulating a legitimate, nondiscriminatory reason for the discharge under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
 
 I.
 
 2
 The facts as found by the district court are as follows. Donaldson, a black male, was first employed by Taylor on January 14, 1971, as a machine operator. During the course of his employment, he was represented for collective bargaining purposes by defendant Local 837 and was subject to a collective bargaining agreement. At the time of his discharge he held the position of union steward.
 
 
 3
 The incident which triggered plaintiff's discharge occurred on February 12, 1974. Donaldson arrived late for work, and instead of reporting to supervisor Robert Britton as required by the collective bargaining agreement, he left his job area to conduct union business, specifically, the passing out of vacation slips. When Britton sought out Donaldson and discovered that he was attending to union affairs, he permitted him to continue, notwithstanding his violation of the collective bargaining agreement. When the plaintiff returned to his work station, Britton instructed him to work in the "Ford area," so named because it was the part of the plant where Taylor had historically manufactured products for the Ford Motor Company. Donaldson refused the work assignment and insisted upon preparing a written grievance regarding Britton's order. Britton advised him that he could write the grievance, but that he had to do the assigned work first. Donaldson again refused to obey the work order.
 
 
 4
 The Chief Union Steward was summoned and explained to the plaintiff that he was required to follow his supervisor's directive, but that a grievance could be filed later.[1]
 
 
 5
 As soon as the Chief Steward left, Donaldson chose to ignore his explanation and wrote the grievance. When Britton again renewed the work order, Donaldson, shaking his finger in Britton's face, said that he was going to write the grievance and that if Britton didn't give him the time off to do it, they "could settle it another way." Donaldson further told Britton that he could take that as a threat if he wanted to do so. At this point, Britton suspended Donaldson effective immediately, rang out his time card, and notified the Chief Union Steward what had transpired.
 
 
 6
 Before a final decision was made regarding the plaintiff, his employment record as a whole was reviewed by Taylor's Director of Industrial Relations, Director of Manufacturing, Plant Superintendent, and the plaintiff's supervisor. In addition to the February 12 incident with Britton, Donaldson's record contained the following notations.
 
 
 7
 First, on the Thursday of the week after Thanksgiving, 1973, Donaldson, in his capacity as a union steward, accompanied Viola Oakley to the payroll office in an effort to secure her holiday pay. Rebecca McDowell, who was alone in the office at the time, explained to the plaintiff that the holiday pay would appear on Oakley's next check due to a delay in ascertaining her entitlement to the pay. This delay resulted from Oakley's absence from work before the holiday and was not the fault of Taylor. Despite the explanation, the plaintiff refused to leave and demanded immediate payment in a loud and intimidating manner. McDowell summoned the Director of Industrial Relations and Director of Manufacturing, who instructed the plaintiff to leave and advised him that he was risking being discharged. Plaintiff refused. He was then advised that he would be discharged on the spot if he failed to obey the directive, at which point he left.
 
 
 8
 Secondly, Donaldson had been warned on many occasions about spending excessive amounts of time on union business, and about failing to notify his supervisor before leaving his job to conduct such business, as required by the collective bargaining agreement.
 
 
 9
 Third, Donaldson had received several warnings regarding his record for absenteeism and tardiness.
 
 
 10
 Fourth, on February 8, 1979, only four days before the final incident, after the dinner break, Donaldson's time card was punched, but he was not in the plant. When Donaldson came in eight minutes later with his hat and coat, he stated that he had been talking to a friend and denied punching his time card in early.
 
 
 11
 Finally, on November 26, 1973, Donaldson had filed a written request for bereavement pay in conjunction with his attendance at the funeral of his wife's uncle. The union contract did not provide for bereavement pay except in cases of attendance at the funeral of a member of the immediate family.
 
 
 12
 After consideration of Donaldson's total employment record, Taylor management concluded that it was justified in discharging the plaintiff due to his repeated violations of the collective bargaining agreement and plant rules. Both Donaldson and the union were notified of the discharge and the grounds on February 14, 1974.
 
 
 13
 Thereafter, the plaintiff filed a grievance requesting reinstatement with full pay from February 12. Pursuant to the grievance procedure outlined in the collective bargaining agreement, the plaintiff was initially represented by the local union through its president. The grievance was denied by the company through the first three steps. At Step Three-A, Donaldson was represented by both the local bargaining committee and a representative of the International Union. After the Step Three-A meeting with the company, however, the union officials decided not to take the grievance to the next step, which would have been arbitration. Although the district court did not make a specific finding on this point, the plaintiff's own testimony established that he was advised by a representative of the International that this decision by the Local could be appealed to a higher authority in the International.
 
 II.
 
 14
 While plaintiff has challenged the above factual findings of the district court, we do not find them to be clearly erroneous, and indeed, with one possible exception, think the findings have more than ample support in the record.[2]
 
 
 15
 Plaintiff next argues that the trial court's order granting the union's motion to dismiss was based upon an improper assumption that exhaustion of internal union remedies is required in order for an employee to maintain an action against a labor organization under Title VII or § 1981. While the trial judge failed to make findings of fact and state his conclusions of law regarding the union defendant, as required by Rules 41(b) and 52(a), Fed.R.Civ.P., an appellate court may consider a trial court's failure to make findings of fact nonreversible error if it can be ascertained from the record that the prevailing party was clearly entitled to judgment. See Kweskin v. Finklestein, 223 F.2d 677, 679 (7th Cir. 1955); Fed.R.Civ.P. 61. We have reviewed the record and think that the correct legal standard was applied.
 
 
 16
 The gravamen of plaintiff's complaint under § 1981 and Title VII against the union is that it failed to represent him adequately because of his race. In addition, however, we note that despite assertions by plaintiff's counsel at argument that this was a civil rights action only, there was substantial discussion in the record of plaintiff's direct and cross examination regarding the union's alleged breach of its general duty of fair representation. See Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).
 
 
 17
 In dismissing the union, the district court relied on two lines of authority, one stemming from this court's decision in Baldini v. Local Union No. 1095, 581 F.2d 145 (7th Cir. 1978), and the other from Rose v. Bridgeport Brass Co., 487 F.2d 804 (7th Cir. 1973).
 
 
 18
 In Baldini, we held that an employee who brings an action against a union for breach of its general duty of fair representation is first required to exhaust internal union remedies. We observed that:
 
 
 19
 (T)he point of the exhaustion requirement is that a union should have a right to attempt to satisfy disgruntled members, and a court should know just what the union did or did not do with respect to the complaint before trying to decide if fair representation really was denied and what relief would be just in the circumstances.
 
 
 20
 581 F.2d at 149. Plaintiff does not dispute that he failed to exhaust internal union remedies, but argues instead that there is no exhaustion requirement under either Title VII or § 1981, that the court's citation of Baldini was tantamount to an imposition of an exhaustion requirement, and that the dismissal of the union was therefore erroneous as a matter of law. We agree that there is no exhaustion requirement under either of the Civil Rights Acts. See Waters v. Wisconsin Steel Works of International Harvester Co., 502 F.2d 1309 (7th Cir. 1974), cert. denied, 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976). We think, however, that the court's citation of Baldini as one of the bases for its dismissal of the union related not to plaintiff's racial discrimination claims, but rather merely to any claim plaintiff might have had for the breach of the union's duty of fair representation, to the extent that proofs of such a claim were asserted at trial.
 
 
 21
 With respect to the Title VII and § 1981 claims against the union, we are in full agreement with the district court that plaintiff failed to establish a prima facie case. While Donaldson alleged that the union's refusal to take his claim to arbitration was the result of racial discrimination, he failed to produce even a scintilla of evidence that the grievances of similarly situated white employees were treated differently. See Rose v. Bridgeport Brass Co., supra, at 812. Further, we do not think Judge Bauer's opinion in Massey v. Illinois Range Co., 358 F.Supp. 1271 (N.D.Ill.1973), is, as plaintiff urges, inconsistent with this result. In Massey, the court simply held, in considering a pretrial motion to dismiss, that an allegation that the defendant union had failed to aid the plaintiff in filing a grievance because of plaintiff's status as an American Indian, stated a cause of action under Title VII, and that exhaustion of union remedies was not required. As discussed previously, we do not think that the district court here imposed an exhaustion of remedies requirement, and the union's motion to dismiss in this litigation was granted not because plaintiff failed to state a cause of action under Rule 12(b)(6), Fed.R.Civ.P., but rather because Donaldson failed to prove his claim at trial.
 
 III.
 
 22
 Turning to plaintiff's claim against Taylor, Donaldson's only challenge on appeal is that the district court erred in its determination that Taylor had articulated legitimate, nondiscriminatory reasons for his discharge. In support of this claim, plaintiff lists numerous facts which he argues had a sufficient basis in the record, which facts in turn create an "inference" of racial discrimination. With respect to the first contention, we need only note that "(f)indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of witnesses." Fed.R.Civ.P. 52(a).
 
 
 23
 Regarding the assertion that an "inference" of discrimination may be drawn from the record, we do not read the trial court's opinion to hold otherwise. In Furnco Construction Corp. v. Waters, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978), the Supreme Court defined the exact scope of the prima facie case, noting that it was not the equivalent of a finding of discrimination, but rather raises an inference that the defendant's acts, if not otherwise explained, were more likely than not based on consideration of impermissible factors. The burden that shifts thereafter to the employer is consequently one of articulating a legitimate, nondiscriminatory reason for its employment decision. Board of Trustees of Keene State College v. Sweeney, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1979). If the employer meets this burden, the plaintiff will then be given an opportunity to introduce evidence that the employer's proffered justification is a mere pretext for discrimination. The rationale of this allocation of the burden of proof is that
 
 
 24
 we know from our experience that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting. Thus when all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not that the employer, whom we generally assume acts only with some reason, based his decision on an impermissible consideration.
 
 
 25
 Furnco Construction Corp. v. Waters, supra, 438 U.S. at 577, 98 S.Ct. at 2950.
 
 
 26
 Here the trial court found, as plaintiff's counsel contended at argument, that plaintiff had established a prima facie case, which, under Furnco, is equated with an inference of discrimination. Taylor was required to come forward with legitimate, nondiscriminatory reasons for the discharge, and Taylor met this burden. Plaintiff, however, failed to introduce any credible evidence that the articulated reasons were a pretext, i. e., by showing that similarly situated white employees were not discharged for repeated violations of the collective bargaining agreement.
 
 
 27
 For the reasons stated herein, the judgment of the district court is affirmed.
 
 
 
 [1]
 At the time of his discharge, due to layoffs, Donaldson had been bumped from machine operator to stock chaser, a position which entailed supplying parts for assembly to the machine operators. It would appear that the absence of a stock chaser in any given area would have a substantial adverse effect on productivity
 
 
 [2]
 We do agree with plaintiff, however, that with respect to his claim for bereavement pay, the company did not establish that the claim was filed with a fraudulent intent. Rather, we think the record showed only that plaintiff filed the claim with a mistaken, but good faith belief that he was entitled to the pay. While it is true that the contract provided for bereavement pay only for attendance at the funeral of immediate family members and that plaintiff had attended the funeral of his wife's uncle, there was unrebutted evidence that the deceased had raised plaintiff's wife from childhood. Upon learning that he was not entitled to the pay, plaintiff dropped the matter. Our conclusion as to this one matter does not require reversal, however, because even disregarding the bereavement pay episode, the employer's evidence as to the remaining incidents effectively rebutted plaintiff's prima facie case. See discussion, infra