**Frances Sally COTE, Plaintiff,**

v.

**EAGLE STORES, INC., et al.,
Defendants.**

**No. 80 C 6666.**

United States District Court,
N. D. Illinois, E. D.

Nov. 3, 1981.

Holland C. Capper, Chicago, Ill., for plaintiff.

Neal D. Rosenfeld, Karmel & Rosenfeld, Chicago, Ill., for Retail Clerks Union, Local 1504.

J. Paige Clousson, Chicago, Ill., for Eagle Stores, Inc.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Frances Sally Cote ("Cote") has filed a two-count Complaint against Eagle Stores, Inc. ("Eagle") and Retail Clerks Union Local 1504 ("Union") based on her allegedly wrongful discharge from employment with Eagle. Count I charges that Union breached its duty of fair representation. Count II claims that Eagle violated the terms of a collective bargaining agreement. Both defendants have moved for summary judgment. For the reasons stated in this memorandum opinion and order each motion is granted.

### Duty of Fair Representation

Cote was employed as a cashier at one of Eagle's stores. On March 21, 1980 an assistant manager stopped her as she left the store at the end of her regular work day. She had in her possession two cartons of cigarettes for which she was unable to produce a receipt. Cote vigorously asserted then, as she does now, that she paid for the cigarettes but simply lost the receipt. After investigation Eagle decided to discharge Cote.

Union filed a grievance on Cote's behalf, but it was denied. Union then had but did not exercise the right, under its collective bargaining agreement with Eagle, to take the matter to arbitration. Cote contends that Union breached its duty of fair representation (1) in its representation of her during the grievance and (2) by its decision not to seek arbitration.

As Judge Cudahy of our Court of Appeals recently stated, Baker v. Amsted Industries, Inc., 656 F.2d 1245 (7th Cir. 1981):

> Although the fair representation doctrine has been part of our jurisprudence for

nearly four decades, its scope has not been easily susceptible to precise delineation.

That statement proved an understatement when just ten days later another panel of the Court (with Judge Cudahy concurring only in the result but not in the analysis) abruptly changed its interpretation of the doctrine in Hoffman v. Lonza, Inc., 658 F.2d 519 (7th Cir. 1981).[1]

Pre-Hoffman the Seventh Circuit's definitive discussion of the subject had been in Baldini v. Local Union No. 1095, 581 F.2d 145, 150–51 (7th Cir. 1978):

> Under Vaca v. Sipes, supra, 386 U.S. [171] at 190, 87 S.Ct. [903] at 916 [17 L.Ed.2d 842], a union breaches its duty of fair representation when its conduct towards the member is "arbitrary, discriminatory, or in bad faith." It is noted that the standard is disjunctive. Vaca expressly rejected an argument that only obvious breaches such as discrimination or hostile treatment would be actionable.[5] A union may not "arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion."

---

[5] Occasional sentences lifted from their context might make it seem that invidious hostility or some sort of malice is always required ... but the treatment of the issue in Hines v. Anchor Motor Freight, Inc., supra [424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976)], leaves little doubt that such has not become the law.

Baldini's exposition was reinforced in Miller v. Gateway Transportation Co., Inc., 616 F.2d 272, 277 n.11 (7th Cir. 1980):

> Although evidence of intentionally hostile or invidious action by a union is clearly relevant in determining whether the duty of fair representation has been breached, the duty may be breached without scienter on the part of the union. "[P]atently wrongful conduct such as racial discrimination or personal hostility" is not the sole measure of what is prohibited.... A union also breaches its duty when it

---

[1] All discussion of the law in this opinion stems from the research done by this Court's law clerk, Jonah Orlofsky, Esq. Defendants' counsel were unaware of Hoffman though their reply memoranda were filed a month after it was

decided. Once again the need to employ one of the word retrieval services—Lexis or Westlaw—as an aid to research has been graphically demonstrated.

arbitrarily ignores or perfunctorily processes a grievance.

But the *Hoffman* Court distinguished those two cases and provided the Seventh Circuit's most recent exposition of the obligation of fair representation (at 521):

Neither of these cases hold that the "arbitrary" conduct of *Vaca* may be anything less than an intentional wrongdoing, although the *dicta* of footnote 5 in *Baldini*, 581 F.2d at 150, makes that statement. The Supreme Court has made it clear that the employees' judicial remedy for "unfair representation" is not based on concepts of due process. Rather, "the duty of fair representation was judicially evolved ... to enforce fully the important principle that no individual union member may suffer invidious, hostile treatment at the hands of his co-workers." [*Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America v.*] *Lockridge, supra* [403 U.S. 274] at 301 [91 S.Ct. 1909 at 1925, 29 L.Ed.2d 473 (1971)]. The remedy for a failure to fairly represent "carries with it the need to adduce substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." *Id.*

It is against that standard that this Court must now examine the evidence presented by both sides to determine whether any factual issue precludes summary judgment.

Union tenders the affidavit of its Business Agent Douglas Gibbon ("Gibbon"). Gibbon states that after the Union was notified of Cote's discharge he:

(1) filed a grievance with Eagle on Cote's behalf;

(2) spoke with Cote over the phone to gather all facts surrounding her discharge;

(3) had Cote prepare and submit to Union a memo concerning the incident;

(4) visited Eagle on several occasions after the discharge in an attempt to verify Cote's story by comparing it with the information Eagle had gathered (Gibbon found no discrepancies between the two versions); and

(5) attempted to reach a settlement under which Cote would be reinstated with a minor disciplinary penalty (Eagle refused to agree to any settlement whatever).

Union's Executive Board discussed Cote's discharge at its May 14, 1980 meeting. In addition to reviewing the facts surrounding the incident, Union considered the legal opinion of its counsel that Eagle had not violated the collective bargaining agreement by discharging Cote and that an arbitrator would "almost certainly" rule for Eagle. Union's Board voted not to pursue Cote's grievance to arbitration and later reaffirmed that decision on an appeal by Cote's attorney.

In response Cote offers only her own affidavit in which she states that Union failed to represent her adequately in the following respects:

(1) Union failed to develop the fact that Eagle rarely discharged an employee for theft without an admission of guilt or an eyewitness.

(2) Union failed to develop the fact that the Eagle store manager allegedly told Mr. and Mrs. Cote that he personally did not believe she stole cigarettes.

(3) Union failed to develop the fact that Eagle's store manager appears to have judged Cote on the basis of incidents not related to the alleged theft.

(4) Union did not adequately investigate Cote's credibility, as shown by its failure to conduct a personal interview.

(5) Eagle obtained statements from its cashiers saying they did not check out two cartons of cigarettes for Cote. Union failed to develop the fact that some of those cashiers did not recall whether or not they had sold cartons of cigarettes to Cote.

(6) Union failed to produce testimony that Cote was a good worker who was in the habit of buying cigarettes each Friday or Saturday.

▮ Those accusations by Cote, even if true, do not support a charge of breach of

fair representation.[2] While Cote said she had purchased the cigarettes, she was unable to produce a receipt or identify which cashier she paid. Without finding the cashier to whom Cote allegedly gave the money, Union could reasonably conclude that her case was hopeless. Whether or not that decision was correct is not the point. *Hoffman* poses a different question: whether Union's actions demonstrate "evidence of discrimination that is intentional, severe and unrelated to legitimate union objectives." Even applying all inferences favorable to Cote, Union's actions cannot fail that test.

Indeed Cote's Complaint would not survive under the old *Baldini* standard either.[3] There an employee was discharged for theft, then alleged a breach of fair representation when the union decided not to proceed to arbitration. In denying summary judgment the Court noted that (1) the employee had given the union the names of four fellow employees who supposedly could corroborate his alibi and (2) the union had told the employee it would arbitrate but then failed to do so.

Here by contrast Cote was unable to provide Union with substantial evidence weighing in her favor. Union did not itself reflect a favorable view of Cote's chances by committing itself to arbitration at any point. Perhaps most significant in light of the *Baldini* standards, Union relied on the advice of its counsel who had considered the matter carefully. Cote has thus failed to present evidence that demonstrates, or would reasonably create the inference, that Union's conduct was "arbitrary" or "discriminatory" or "in bad faith" (to use the *Vaca* trilogy on which *Baldini* rested). Nor could it reasonably be said to have "arbitrarily ignored" or "perfunctorily processed" the grievance (to use the *Baldini-Miller* locution).

 Because Cote has failed to provide any evidence in support of a claim of a breach of duty of fair representation, her action against Union must fail. Her action against Eagle must likewise fail because the establishment of a breach of duty of fair representation is a part of that cause of action. *Miller*, 616 F.2d at 276; *Baldini*, 581 F.2d at 150.

### Conclusion

There is no genuine issue as to any material fact and defendants are entitled to a judgment as a matter of law. Accordingly each defendant's motion under Fed.R.Civ.P. 56 is granted and this action is dismissed.

---

2. Indeed it should be noted that after Cote was already represented by her own private attorney, Union advised him of its preliminary decision not to proceed to arbitration and of the right to appeal that decision to the Executive Board. It specifically invited any additional material to be presented to the Board. None of the above items—or anything else—was proffered in response.

3. *Hoffman* was written by a distinguished Senior Circuit Judge from outside the Seventh Circuit, with Judge Bauer joining in that opinion. As already stated, Judge Cudahy disagreed with *Hoffman*'s departure from *Baldini* and *Miller*. Thus *Hoffman* reflects two Judges of our Court of Appeals on opposite sides of a sharp break from prior expressions of the Court. Under those circumstances this Court deems it prudent to analyze the case alternatively in *Baldini* terms—though the following portion of this opinion is necessarily dictum in the present post-*Hoffman* state of the law.