**Daniel K. GRAF, Plaintiff-Appellant,**

v.

**ELGIN, JOLIET AND EASTERN RAILWAY COMPANY, and Brotherhood of Railway Carmen, Local No. 882, Defendants-Appellees.**

**No. 82–1864.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 4, 1982.

Decided Jan. 7, 1983.

Thomas E. Cowgill, Cirricione, Block, Krockey & Cornugel, P.C., Joliet, Ill., for plaintiff-appellant.

W. Gerald Thursby, Chicago, Ill., Thomas A. Woodley, Mulholland & Hickey, Washington, D.C., for defendants-appellees.

Before WOOD, ESCHBACH and POSNER, Circuit Judges.

POSNER, Circuit Judge.

We consider in this appeal issues of federal jurisdiction and labor law arising out of the attempt of a railroad worker, Daniel Graf, to sue his union, a local union of the Brotherhood of Railway Carmen, and his employer, the Elgin, Joliet and Eastern Railway.

Graf sustained a concussion in an accident at work. In the course of investigating the accident the railroad learned that when Graf had been hired two years earlier he had not disclosed on his employment and medical forms a previous job, an injury (to his knee) in that job, and a claim for compensation for that injury. All were items of information that the forms required him to disclose, on penalty of being fired if he did not. After an informal hearing before his supervisor, at which Graf was represented by Leo Evans, the chairman of Local 882 (the collective bargaining representative), the railroad fired Graf for having knowingly falsified the forms.

The grievance procedure under the collective bargaining agreement entitled Graf to appeal to his supervisor's boss within 60 days, and thereafter to higher levels in the company and eventually to the arbitration boards created by the Railway Labor Act, see 45 U.S.C. § 153. Graf asked Evans to file an appeal for him and Evans said he would, and later that he had. These appeals customarily are handwritten and hand delivered. Evans wrote out the following appeal: "Please consider this as a appeal to your dission ... [terminating Graf]. I can't except your dission and therefore appeal to the next highest officer of the carrier. We ask that he be reinstated with seniority intack and all back wages." Evans put this appeal in his pocket together with several others, only to find after the 60 days were up that it was still there. He testified in his deposition that the failure to submit Graf's appeal with the other appeals had been inadvertent. Graf in his deposition testified that Evans had told him, "I am sorry. I really thought I put it in."

Graf filed suit in a state court against the company (Count I) and the union (Count II). Count I, which sought reinstatement and back pay, charged that the company had fired Graf for the sole and wrongful reason that Graf had sued it under the Federal Employers Liability Act, 45 U.S.C. §§ 51 et seq., for damages allegedly sustained as a result of the accident. Count II, which sought damages of $15,000, charged that the union had negligently failed to prosecute Graf's grievance. This count originally named Evans as a codefendant but he has been dismissed from the case and Graf does not appeal the dismissal.

The union removed the suit to federal district court and moved for summary judgment. The district judge granted the motion and dismissed Count II on the ground that the union had not breached its duty of fair representation. The judge then dismissed Count I on his own initiative because breach of the union's duty is a precondition to maintaining a suit against the company.

Graf's state court complaint had not indicated under what law he was suing, and in removing the suit the union did not indicate why it thought Graf's complaint was within the original jurisdiction of the federal district court. After removal Graf filed an amended complaint in the district court, but it was virtually identical to the original one and likewise did not indicate the legal basis for the suit. The district court never stated what it thought the basis of federal jurisdiction was either.

▉ There is a natural assumption, based on section 301 of the Taft-Hartley Act, 29 U.S.C. § 185, that all suits to enforce collective bargaining agreements (including suits by individual workers, see *Smith v. Evening News Ass'n,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962)) are within the original jurisdiction of the federal district courts and hence removable under 28 U.S.C. § 1441 if filed in state court. And Graf's state court complaint, at least if read very liberally, alleges that the union violated its duty of representation under the collective bargaining agreement and that the company violated the agreement by firing him. But section 301 does not apply to employers subject to the Railway Labor Act (see sections 2(2), 2(3) of the National Labor Relations Act, as amended, 29 U.S.C. §§ 152(2), (3), and section 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a)), as the employer in this case is conceded to be; and no other statute purports to give the federal courts jurisdiction to enforce collective bargaining agreements with such employers. It is true that awards and denials of awards by arbitral boards created by the Railway Labor Act are reviewable in federal district court, 45 U.S.C. §§ 153 First (p), (q), 153 Second, but Graf is not seeking judicial review of the denial of an award.

▉ If the complaint can be read to allege a violation of the Railway Labor Act itself rather than just of the collective bargaining agreement, then 28 U.S.C. § 1337 confers original federal jurisdiction. See, e.g., *Raus v. Brotherhood of Railway Carmen,* 663 F.2d 791, 796 (8th Cir.1981). *Steele v. Louisville & Nashville R.R.,* 323

U.S. 192, 199, 204, 65 S.Ct. 226, 230, 232, 89 L.Ed. 173 (1944), held that the Railway Labor Act imposes on the collective bargaining representative a duty independent of the terms of the agreement to represent all members of the bargaining unit fairly. Count II can be read to allege a breach of that duty, and therefore 28 U.S.C. § 1337 does confer federal jurisdiction over this count.

The basis of federal jurisdiction over Count I, which alleges retaliatory discharge by the railroad, is less clear. There is no suggestion that the company participated in the union's alleged violation of the statutory duty of fair representation; if it had, the basis of jurisdiction would be the same as over Count II. A claim that you have been retaliated against for exercising a federal right—the right to sue under FELA—might raise a federal question substantial enough to confer federal jurisdiction under 28 U.S.C. § 1331. It is unclear, though, what federal law such retaliation would violate. Apparently it would not violate the FELA itself, see *Greenwood v. Atchison, Topeka & Santa Fe Ry.,* 129 F.Supp. 105, 107 (S.D.Cal.1955); *Loucks v. Star City Glass Co.,* 551 F.2d 745, 749 (7th Cir.1977), or federal labor law, cf. *Krispy Kreme Doughnut Corp. v. NLRB,* 635 F.2d 304 (4th Cir.1980). Although the fact that a federal claim is without merit will not defeat federal jurisdiction unless the claim is frivolous, *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), this observation has only limited relevance to the question at hand, which is whether there is any federal jurisdictional peg on which Graf can hang a claim that the company violated the collective bargaining contract. A claim of retaliatory discharge having no basis in federal law would be dismissed before trial and any pendent state-law claims would be dismissed along with it. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

Diversity of citizenship was the ground on which a federal district court assumed jurisdiction over an employee's suit against his employer for breach of the collective bargaining contract in *Moore v. Illinois Central R.R.,* 312 U.S. 630, 632, 61 S.Ct. 754, 755, 85 L.Ed. 1089 (1941) (see dissenting opinion in the court of appeals, *Illinois Cent. R. Co. v. Moore,* 112 F.2d 959, 967 (5th Cir.1940)), but diversity is not alleged here and appears not to be present. Moreover, *Andrews v. Louisville & Nashville R.R.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972), in overruling *Moore,* held that the arbitral remedies provided by the Railway Labor Act are exclusive and extinguish any remedies under state law. Maybe, though, the following can be argued: if, as alleged in the present case, the union, by violating its duty of fair representation, prevents the worker from taking advantage of the remedies set up by the Act, his rights under state law survive because Congress would not have wanted to leave him completely without remedy. But this way of distinguishing *Andrews* would not solve Graf's jurisdictional problem; he would still have to show how he can bring a suit under state law in federal court if there is no diversity.

Now Graf, as we shall see, may not be able to get complete relief in his suit against the union. Complete relief may require bringing in the company as an additional defendant. If so, Rule 19 of the Federal Rules of Civil Procedure would authorize joinder. But Rule 19 is not a source of federal subject-matter jurisdiction, 3A Moore's Federal Practice § 19.04(2.–2) at pp. 19–68 to 19–70 (1982). And although the same considerations that support joinder might appear to support federal jurisdiction over Graf's claim against the company under the "pendent parties" concept, the current judicial hostility to that concept, illustrated by our recent decision in *Hixon v. Sherwin-Williams Co.,* 671 F.2d 1005, 1008–09 (7th Cir.1982), may make this an unpromising avenue, though *Hixon* itself is distinguishable.

Language in *Andrews,* see 406 U.S. at 323, 92 S.Ct. at 1564, and in *International Ass'n of Machinists v. Central Airlines, Inc.,* 372 U.S. 682, 692, 83 S.Ct. 956, 962, 10 L.Ed.2d 67 (1963), suggests a more direct approach: a suit for breach of a collective

bargaining contract arises under the Railway Labor Act, and is therefore within the federal district courts' original jurisdiction under 28 U.S.C. § 1337. See *Goclowski v. Penn Central Transport. Co.,* 571 F.2d 747, 752 n. 2 (3d Cir.1977). But we have misgivings about this approach too. *Andrews* and *Central Airlines* do say that rights of action to enforce collective bargaining agreements arise under the Railway Labor Act, but *Central Airlines* involved a statutory provision applicable only to airlines (45 U.S.C. § 184), while the issue in *Andrews* was not whether a suit on a railroad collective bargaining agreement arises under the Railway Labor Act but whether the arbitral remedies created by the Act preempt suits under state contract law, and the fact that the Act creates a defense to a suit under state law would not make it a suit arising under federal law and hence removable to federal court, see *Illinois v. Kerr-McGee Chem. Corp.,* 677 F.2d 571 (7th Cir.1982).

■ Nor does the fact that an activity is regulated by a federal statute, as collective bargaining in the railroad industry is regulated by the Railway Labor Act, mean that disputes between private parties engaged in that activity arise under the statute. See *T.B. Harms Co. v. Eliscu,* 339 F.2d 823, 827–28 (2d Cir.1964). For example, the Supreme Court held recently that section 13(c) of the Urban Mass Transportation Act, 49 U.S.C. § 1609(c), which requires transit authorities to protect the interests of affected workers before the authority may receive federal money, does not authorize a union to sue in federal court for alleged violations of the protective arrangements or of the collective bargaining agreement embodying those arrangements. *Jackson Transit Authority v. Local Division 1285, Amalgamated Transit Union,* —— U.S. ——, 102 S.Ct. 2202, 72 L.Ed.2d 639 (1982). The Court in *Jackson Transit Authority* did not cite *Andrews;* it distinguished *Central Airlines* by reference to the purpose of the statutory provision involved in that case (and not in this case); and it indicated, as it has in many other recent cases, e.g., *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), a reluctance to

create a private right of action under a federal statute without direct evidence that Congress desired this result. 102 S.Ct. at 2206–07. There is no evidence that the draftsmen of the Railway Labor Act wanted the federal courts to exercise original jurisdiction over contract disputes, as distinct from the very limited review jurisdiction that the Act explicitly gives them over decisions by the arbitral boards. Though *Jackson Transit* does not question the authority of *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), where the Supreme Court held that section 301 of the Taft-Hartley Act gives the federal courts the power to create a federal common law to govern the interpretation of collective bargaining agreements, there is no counterpart to section 301 for the railroad industry.

■ Despite all these grounds for doubt we believe that Graf's contract claim against the railroad does arise under federal law—federal common law. Although the Railway Labor Act neither establishes standards for interpreting collective bargaining agreements nor explicitly authorizes the federal courts to establish them, but instead gives responsibility for such interpretation to the arbitral boards, the Act has been construed to create a duty of fair representation, and so construed it sometimes requires the courts to interpret railroad collective bargaining agreements. *Richins v. Southern Pac. Co.,* 620 F.2d 761, 763 n. 3 (10th Cir.1980). Since a union's failure to represent a worker in the grievance process injures him only if his grievance has merit—only if the collective bargaining agreement has been violated—the court, as an essential step in computing damages in any duty of fair representation case, must decide whether the agreement has been violated. It is not to be supposed that the law applied in these decisions is some state's law of labor contracts, especially after *Andrews* held that the Railway Labor Act extinguished state contract remedies for breach of railroad collective bargaining contracts. For this and other reasons there is no well-developed state law on how to interpret

such contracts. That makes this case the converse of *Powers v. United States Postal Serv.*, 671 F.2d 1041, 1045–46 (7th Cir.1982), where in holding that state law rather than federal common law governs the interpretation of post office leases we noted that state landlord-tenant law was well developed but a federal common law of landlord-tenant relations had never developed at all.

Since a federal common law of railroad collective bargaining contract interpretation is being applied in workers' suits against unions, it makes sense to apply it also in the worker's suit against his employer. This is obvious enough where, as in *Glover v. St. Louis-San Francisco Ry.*, 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969), the suit charges the union and the company with colluding in violation of the Railway Labor Act to prevent the worker from having his grievance considered under the procedures set up by the collective bargaining agreement. The court has the power to award damages against both the union and the employer for their violation of the Act and correlatively to determine whether the grievance has merit, and federal common law controls this determination. If only the union has violated the Act, but the violation has prevented the worker from using the arbitral system to prosecute his grievance against the company and as a result the worker sues the employer in federal court for breach of the collective bargaining agreement, federal common law should apply to that breach also. Since the court must decide in the remedy phase of the suit against the union whether as a matter of federal common law the collective bargaining contract was breached, how peculiar it would be if the court had to decide the same question under state law (and state law that may not exist) in the suit against the employer arising from the same breach.

Now that the amount in controversy requirement has been abolished in federal question cases, it hardly matters whether this area of federal common law is regarded as a thing apart from the Railway Labor Act, so that federal jurisdiction is conferred by 28 U.S.C. § 1331, or as a part of the Act,

so that jurisdiction also lies under section 1337. See *Central Airlines, supra*, 372 U.S. at 696, 83 S.Ct. at 964. Either way, there is, we conclude, federal jurisdiction over Count I. But this conclusion must remain tentative, at least for the moment, because Count I raises another jurisdictional issue: whether, so long as the company is not implicated in the union's violation of the duty of fair representation, the arbitral remedies created by the Railway Labor Act are exclusive and therefore prevent a worker from suing in a federal court for breach of the collective bargaining contract. We postpone consideration of that question because it is bound up with the merits of Count II, the suit against the union—to which we now turn.

In *Hoffman v. Lonza, Inc.*, 658 F.2d 519, 523 (7th Cir.1981), another case where the union "griever" simply forgot to perfect the worker's appeal within the system created by the collective bargaining agreement, a panel of this court held that the duty of fair representation had not been breached. Proof of negligence was not enough; intentional misconduct had to be shown. Graf argues that Evans deliberately failed to forward his appeal and by also failing to tell Graf what he had done (or rather not done) prevented Graf from prosecuting the grievance himself. But Evans' vigorous denial, under oath, of deliberate neglect obliged Graf, if he was to resist summary judgment, to present some evidence in support of his theory, see Fed.R.Civ.P. 56(e); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970), and he presented none. He was not able to show any motive for Evans' trying to do him in—personal animosity, union politics, or anything else. The form and text of the appeal drafted by Evans indicate, what is anyway plain, that the representation process in grievance matters is informal. Inadvertent omissions to prosecute grievances must be common, and do not imply bad faith.

But Graf also asks us to reexamine the standard adopted in *Hoffman,* and we think we ought to do so. That standard was

adopted by a two to one vote with the two judges of this circuit on the panel split. Although two other panels have followed *Hoffman,* see *Rupe v. Spector Freight Systems, Inc.,* 679 F.2d 685, 691–92, 694 (7th Cir.1982); *Cote v. Eagle Stores, Inc.,* 688 F.2d 32, 34 (7th Cir.1982) (per curiam), both were careful to apply in the alternative the slightly less stringent standard of an earlier case in this circuit, *Baldini v. Local No. 1095, United Auto Workers,* 581 F.2d 145, 150–51 (7th Cir.1978), which requires that the worker prove that the union's conduct was "arbitrary." See also *Miller v. Gateway Transport. Co.,* 616 F.2d 272, 277 nn. 11–12 (7th Cir.1980). And several other circuits use a *Baldini* rather than a *Hoffman* standard. See, e.g., *Griffin v. United Auto Workers,* 469 F.2d 181, 183 (4th Cir. 1972); *Beriault v. Local 40, Super Cargoes & Checkers of Int'l Longshoremen's & Warehousemen's Union,* 501 F.2d 258, 263–64 (9th Cir.1974); *Foust v. International Brotherhood of Elec. Workers,* 572 F.2d 710, 715 (10th Cir.1978); *Farmer v. ARA Services, Inc.,* 660 F.2d 1096, 1103 (6th Cir.1981). The Third Circuit's decision in *Medlin v. Boeing Vertol Co.,* 620 F.2d 957, 961 (3d Cir.1980), however, supports *Hoffman.*

*Vaca v. Sipes,* 386 U.S. 171, 194, 87 S.Ct. 903, 918, 17 L.Ed.2d 842 (1967), the Supreme Court's fullest discussion of the duty of fair representation, contains a pregnant dictum: "In a case such as this, when [the worker with the grievance] supplied the Union with medical evidence supporting his position, the Union might well have breached its duty had it ignored [his] complaint or had it processed the grievance in a perfunctory manner." The dictum was repeated in *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 568–69, 96 S.Ct. 1048, 1058, 47 L.Ed.2d 231 (1976), and very recently in this circuit in *United Steelworkers of America v. NLRB,* 692 F.2d 1052, 1057 (7th Cir.1982) (per curiam); but see *Motor Coach Employees v. Lockridge,* 403 U.S. 274, 299, 91 S.Ct. 1909, 1924, 29 L.Ed.2d 473 (1971), not cited in *Hines.* The force of the word "perfunctory" is unclear, though. It could just mean refusing—deliberately refusing—to do more than go through the motions. Cf.

*Rupe v. Spector Freight Systems, Inc.,* supra, 679 F.2d at 694; *Ethier v. United States Postal Serv.,* 590 F.2d 733, 736 (8th Cir.1979). But it could also cover a case of sheer forgetfulness such as we have here.

The proper standard cannot be determined by parsing ambiguous dicta, especially when none of the cases we have cited arose under the Railway Labor Act. Though the duty of fair representation is usually assumed to be the same under the different federal labor laws, see, e.g., *United Parcel Serv., Inc. v. Mitchell,* 451 U.S. 56, 66 n. 2, 101 S.Ct. 1559, 1566 n. 2, 67 L.Ed.2d 732 (1981) (Stewart, J., concurring), we shall see that this assumption overlooks some relevant differences.

Maybe, though, the precise choice of verbal formulas to define the duty of fair representation has little practical significance. The facts in this case are like the facts in *Hoffman,* where the panel, although unable to agree on the proper standard, was unanimous that the union had not breached its duty of fair representation. And *Baldini* is readily distinguishable, as it involved a deliberate rather than inadvertent failure to prosecute the plaintiff's grievance. But there is so much litigation over the duty of fair representation that it seems worthwhile to specify the applicable standard as clearly as possible. We have therefore reexamined *Hoffman,* and having done so we have concluded that its standard is correct, at least for cases arising under the Railway Labor Act.

■■■■■ The standard is as follows. The union has a duty to represent every worker in the bargaining unit fairly but it breaches that duty only if it deliberately and unjustifiably refuses to represent the worker. Negligence, even gross negligence—a much-criticized standard, see, e.g., Prosser, Handbook of the Law of Torts 182 (4th ed. 1971)—is not enough; and, obviously, intentional misconduct may not be inferred from negligence, whether simple or gross. Although extreme recklessness is so close to intentional wrongdoing that the law treats it as the same thing, see, e.g., *United States*

*v. McAnally,* 666 F.2d 1116, 1119 (7th Cir. 1981), we need not worry about that refinement in this case; it is clear on which side of the line Evans' failure to dig Graf's appeal out of his pocket falls. The failure to perform a legal duty is negligence, or if the cost of performing it would be much less than the expected benefits gross negligence, *Conway v. O'Brien,* 111 F.2d 611, 612 (2d Cir.1940), rev'd on other grounds, 312 U.S. 492, 61 S.Ct. 634, 85 L.Ed. 969 (1941); and Evans' action was one or the other. But he was not trying to do in Graf; nor does his lapse of memory signify such a reckless indifference to Graf's interests that it can be called intentional misconduct. And while common sense tells us that the reason Evans was not careful to preserve Graf's appellate rights may have been that he thought the grievance had little merit, this would make Evans at worst somewhat devious. It would not show intentional misconduct. A union is not required to prosecute a grievance that it honestly believes lacks merit. *Vaca v. Sipes, supra,* 386 U.S. at 192–95, 87 S.Ct. at 917–19. There is no evidence that Evans was acting in bad faith.

The *Hoffman* standard is a narrow one— and properly so, especially in a case under the Railway Labor Act. That Act does not purport to create any private damage remedies against unions at all, and the courts should be cautious in inferring them, cf. *Jackson Transit, supra,* 102 S.Ct. at 2206– 07; *Touche Ross, supra,* 442 U.S. at 568–76, 99 S.Ct. at 2485–89. Major provisions of the Act date from 1934, the heyday of pro-union legislation (the Wagner Act was passed the next year), and even the original act of 1926 had been supported by the railroad unions, see Legislative History of the Railway Labor Act, as Amended 175 (Comm. Print 1974); Kaufman, Collective Bargaining in the Railroad Industry 66 (1954). Moreover, the Act was not amended by the Taft-Hartley Act, as the Wagner Act was. And while Congress has sometimes worried about the honesty of unions, it has never worried about their competence to carry out the tasks that are in their self-interest to carry out.

A practical consideration in favor of a narrow standard of liability is suggested by the text of the appeal drafted by Evans. Most of the union officers who process grievances and commit the gaffes that propel the Grafs of this world into court are not professional advocates. They are hourly workers "grieving" on a part-time basis. It would not be realistic to try to hold them to the same standard as lawyers, who are liable in damages if they fail to file their clients' appeals on time, and yet Graf wants us to judge Evans' inaction by what amounts to a concept of professional malpractice. True, the standard of care in negligence cases (the "reasonable man" standard) is sometimes scaled down to reflect a realistic assessment of the defendant's capabilities: if a ten year old is sued in tort, the standard of care applied is that of the average ten year old, not of the average person. See Prosser, *supra,* at 155. We could lower the standard of care applied in legal malpractice cases until it was a realistic standard to which to hold union grievers; but being remote from conditions on the shop floor, we would find it hard to set the right standard.

The representative character of the union and its officers must also be considered. Like any elected representative Local Chairman Evans must render an adequate level of "constituent service" to retain his position in the union; and the union must use competent grievers to retain its position as the workers' collective bargaining representative. Both officer and union thus have incentives to exercise care that are independent of the incentives that liability for negligence would provide. This is especially so in the railroad industry. A railroad worker is not required to use a union "griever" to prosecute his grievance. He can prosecute it on his own. See 45 U.S.C. § 153 First (i); *Essary v. Chicago & N.W. Transport. Co.,* 618 F.2d 13, 17 n. 6 (7th Cir.1980). If distrust of union grievers leads many railroad workers to do their own grieving, they will wonder whether they are getting good value for their union dues. It is not in the union's interest for its

agent to lose, in either a literal or a figurative sense, a worker's appeal unless the worker and the union are on the outs, and in that case the union would be liable under the *Hoffman* standard.

That standard serves also to protect a long-standing objective of federal labor law by minimizing judicial intervention in labor disputes normally resolved by arbitration. Cf. *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 568–69, 80 S.Ct. 1343, 1346–47, 4 L.Ed.2d 1403 (1960). Section 301 of the Taft-Hartley Act may have introduced a discordant note by making collective bargaining agreements judicially enforceable, but that statute does not apply here, and maybe one of the reasons Congress did not put the railroad industry under section 301 was that the Railway Labor Act unlike the National Labor Relations Act creates an elaborate scheme of arbitral remedies for violations of collective bargaining agreements. This scheme makes judicial interpretation of collective bargaining agreements even more otiose than in other industries. If the federal courts are to decide whether unions are competently representing workers with grievances—if they are to create and enforce a standard of care, and a reciprocal concept of malpractice, governing the union's relationship with the workers—they will be deeply involved in the railroad industry's labor relations.

The extent of judicial involvement would be disturbing even if a court never had to interpret a collective bargaining agreement in a suit against a union for violating the duty of fair representation (but it would, as we have seen), and even if the worker was not allowed to bring in the company as an additional defendant. Contrary to what the district court believed, the worker's remedies against the union and against the railroad are logically separable. The court's error, though, was a natural one. Most duty of fair representation cases come out of industries where collective bargaining contracts give unions the exclusive authority to prosecute grievances. In such industries the worker may not complain about a violation of the contract unless he shows

that the union has violated its duty of fair representation. But a railroad worker is entitled to prosecute his grievances on his own.

This fact may seem to indicate that allowing the worker a broad right of action against the union for violation of the statutory duty of fair representation need not entangle the court in litigation over the company's duty to the worker under the collective bargaining agreement. But the appearance is deceptive. The court as we have noted will have to interpret the agreement in the remedy phase of the suit against the union. Moreover, if the worker succeeds in proving that the union breached its duty to him, the court may not be able to provide an adequate remedy unless it allows him to litigate against the company as well. The problem is not just that the local union, if small, as many local unions are, may not be able to pay a damages judgment. Often the worker will, like Graf, be seeking reinstatement, which only the company can give him. Graf can try to haul the company before an arbitral board but he will get no satisfaction unless the board forgives noncompliance with the time limits in the agreement, which is unlikely. See Lazar, Due Process in Disciplinary Hearings: Decisions of the National Railroad Adjustment Board 353–65 (1980). A court reviewing a denial of an award on this ground is unlikely to compel such forgiveness either, owing to the extremely narrow scope of judicial review of the actions of those bodies. See *Union Pac. R.R. v. Sheehan*, 439 U.S. 89, 93–94, 99 S.Ct. 399, 401–402, 58 L.Ed.2d 354 (1978); *Essary v. Chicago & N.W. Transport. Co., supra;* but see *Stanton v. Delta Air Lines, Inc.*, 669 F.2d 833 (1st Cir.1982).

If for these reasons, which some courts have found persuasive, see, e.g., *Shum v. South Buffalo Ry.*, 496 F.2d 328, 331–32 (2d Cir.1974), the worker is allowed to litigate against the company, he must prove a violation of the collective bargaining contract to prevail, which means that the court will have to interpret the contract to determine liability as well as damages. Other courts,

however, require the worker to channel his complaint against the company through the remedial system set up by the Railway Labor Act, even though he is properly in court against the union, unless there is collusion between the union and the company. See, e.g., *Raus v. Brotherhood of Railway Carmen,* 663 F.2d 791, 798 (8th Cir.1981). (Collusion would make the remedies under the Railway Labor Act futile. The arbitral boards are composed of a company representative, a union representative, and a neutral—who cannot outvote the other two if they are colluding.) The choice between confining the worker to arbitral remedies that may be worth nothing to him because the union failed to prosecute his grievance in timely fashion and allowing him to prosecute his grievance in court upon proving that the union breached its duty of fair representation is not a happy one. (Our circuit has not taken sides yet. In *Essary,* which dismissed a suit against an employer, the union was not a party to the appeal, and we did not have occasion to decide whether it had breached its duty of fair representation. See 618 F.2d at 14, 17 n. 6.) *Raus* leaves the worker without any remedy against the company, because of a procedural default for which he is blameless; he has a remedy against the union but it may not be adequate. *Shum* destroys the employer's reasonable reliance on the deadlines that the collective bargaining agreement imposes on the prosecution of grievances, and requires the court to interpret the agreement—but the court will have to do that anyway in the remedy stage of the suit against the union, if the suit reaches that stage.

We need not choose between these approaches since Graf failed to prove a breach of the union's duty. But it is relevant to observe that the approach of *Shum,* which allows the worker to prosecute his grievance in federal court when the union has violated its duty of fair representation, has at least some apparent merit and some judicial support and, unless totally rejected, points toward using a narrow standard to determine the union's liability—a *Hoffman* standard. (The approach of *Raus* is consist-

ent with either a broad or a narrow standard.) *Hoffman* minimizes the occasions on which a federal district court has to take over the function of the arbitral boards and enforce a collective bargaining agreement. The court will do so only when the worker can prove intentional misconduct by the union in failing to prosecute his grievance.

We have given reasons for a narrow standard of liability but we cannot prove that the standard should be that of *Hoffman.* The sense that it should be narrow is pretty much universal. No court thinks simple negligence would be a proper standard. The courts that reject *Hoffman,* that use a standard midway between simple negligence and intentional misconduct, have adopted in effect gross negligence. But as noted earlier that standard is criticized as too vague. This consideration tips the balance in favor of *Hoffman.* Count II was correctly dismissed.

■ The district judge dismissed Count I on his own initiative because he thought it had to fall when Count II fell. This was not quite correct. What is true is that unless the union has breached its duty of fair representation, a worker may not sue in court for breach of a collective bargaining contract; the Railway Labor Act confines him to arbitration and to the narrow judicial review of arbitration which the Act provides. *Order of Railway Conductors of America v. Pitney,* 326 U.S. 561, 565–66, 66 S.Ct. 322, 324, 90 L.Ed. 318 (1946); *Slocum v. Delaware, Lackawanna & W.R.R.,* 339 U.S. 239, 244, 70 S.Ct. 577, 579, 94 L.Ed. 795 (1950). Therefore, if the claim against the union is dismissed, as it properly was here, the claim against the company must be dismissed too. The company moved to dismiss on this ground and after the union's claim was dismissed the motion should have been granted—but only insofar as Count I alleges a violation of the collective bargaining agreement. Conceivably it also alleges a tort under federal or state law; indeed, that is how Count I actually reads. In the unlikely event that it is found to state a claim under federal law the district court should retain jurisdiction. But if it is found

to state only a state tort claim it should be remanded to the state court where this suit began. We need not consider whether a claim of wrongful discharge under state tort law is preempted by the Railway Labor Act.

The judgment dismissing Count II of the complaint is affirmed. The judgment dismissing Count I in its entirety is vacated and the case is remanded for further proceedings consistent with this opinion. No costs in this court.

So ORDERED.

HARLINGTON WOOD, Jr., Circuit Judge, concurring in part and dissenting in part.

My disagreements with Judge Posner's majority opinion are not serious.

Since the jurisdictional issue considered by Judge Posner was not raised, briefed or argued by the parties in the district court or in this court I hesitate to embrace his discussion of that issue although it may very well be a correct analysis. If I saw a serious question about our jurisdiction apparently overlooked by the parties, as I do not in this case, I would prefer to give the parties some additional opportunity to be heard on the issue before resolving it in a precedential opinion.

Judge Posner also reads Count I as possibly alleging a tort under federal or state law, and therefore vacates its dismissal and remands. Plaintiff, however, had not made that suggestion. In his complaint he alleged that he "was prevented from exhausting his administrative remedies as against" the railroad because of the Union's failure to timely appeal his dismissal. Plaintiff's own approach has been to tie the fate of Count I to Count II. Since it appears to me that the plaintiff narrowly viewed his own complaint, as did the other parties and Judge Grady, I would not endeavor to re-characterize it for him as sounding in tort at this stage. I would affirm the dismissal of Count I alternatively under *Andrews v. Louisville and Nashville R. Co.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972) which I believe compels parties to discharge

cases arising under the Railway Labor Act, 45 U.S.C. § 153, by arbitrating their disputes before the Adjustment Board. That was not done.

Therefore I would affirm on all issues, respectfully dissenting from the partial disposition of Count I.